JOSEPH H. NASH V. JAMES A. COSTELLO.

FILED FEBRUARY 2, 1898. No. 7784.

Fraudulent Conveyances: EVIDENCE. The evidence in this case examined and *held* insufficient to sustain the verdict of the jury.

ERROR from the district court of Hall county. Tried below before THOMPSON, J. *Reversed.*

*W. T. Thompson, O. A. Abbott,* and *Abbott & Caldwell,* for plaintiff in error.

*W. H. Thompson, Charles B. Keller,* and *W. A. Prince, contra.*

RYAN, C.

The sheriff of Hall county levied several writs of attachment issued out of the district court of said county on a stock of goods in the possession of Joseph H. Nash. As the owner of said goods, Nash, in the same court, replevied them from the sheriff. A trial to a jury resulted in a verdict in favor of the sheriff, upon which a

judgment was rendered, of which Nash, upon proceeding in error in this court, seeks a reversal.

On the trial of this cause in the district court Nash introduced in evidence the following written memorandum:

"In consideration of eight thousand three hundred dollars to us in hand paid, the receipt of which is hereby acknowledged, we, each for ourselves individually, and jointly and separately, do hereby sell and convey unto Joseph H. Nash our entire stock of general merchandise, together with all furniture and fixtures, also all notes due to us and all book accounts and other bills receivable due to us, said goods, chattels, and merchandise now in the storeroom situated upon lot numbered six (6), in block numbered five (5), in the town of Mason City, county of Custer, state of Nebraska, and the title to the same we will, and our heirs and assigns shall, defend against all lawful claims of any nature whatever. In witness whereof, we have hereunto set our hands at Mason City, Nebraska, this 3d day of November, A. D. 1892.                         J. M. PERSINGER.

"A. B. WARRELL & CO."

"In presence of
"DENNIS RUNYON."

N. R. Persinger, on behalf of plaintiff, testified that during 1892 he was the president of the Central City Bank, of Central City, Nebraska, and was acquainted with certain obligations held by the bank against A. B. Warrell, John M. Persinger, and the Merrick County Mercantile Company. One of these he identified and it is of the descriptions following, to-wit: A promissory note dated September 22, 1892, payable ninety days after date to the Central City Bank of Central City, for $4,000, with ten per cent per annum interest after maturity, made by the Merrick County Mercantile Company, per J. M. Persinger. Another obligation which was held by Joseph H. Nash was identified by this witness, of which the description was as follows: A promissory note dated

June 30, 1892, executed by the Merrick County Mercan-
tile Company to Joseph H. Nash, for $1,075, drawing ten
per cent interest per annum from date, due by its terms
six months after date. The third obligation identified
by this witness was a promissory note of date September
22, 1892, due ninety days after date to the aforesaid Cen-
tral City Bank, for $3,300, drawing ten per cent per
annum interest from maturity, executed by A. B. War-
rell. These three notes, N. R. Persinger testified, con-
stituted the consideration named in the above memoran-
dum. There was no effort made to show that these notes
evidenced an indebtedness which had no real existence.
N. R. Persinger further testified that on the date of the
above memorandum, at the request of Mr. Nash, he took
the above described promissory notes to Mason City,
where A. B. Warrell was running a store, and induced
him to execute the above memorandum and transfer the
possession of the personal property therein described to
a person sent by Mr. Nash to take possession thereof im-
mediately upon Mr. Nash being notified that the memo-
randum had been signed. This witness testified that the
notes due the bank were transferred to Mr. Nash, by
whom, soon after the date of the memorandum, all three
notes were delivered to A. B. Warrell as having been
paid. He also testified that the note made to Mr. Nash
was for money individually loaned by Mr. Nash, inde-
pendently of the bank or of his relationship thereto as
its cashier, and there was no evidence offered contradic-
tory of this statement.

The fraud sufficient to vitiate the transfer to Mr. Nash,
of which the attaching creditors asserted the existence,
was based upon the alleged identity of A. B. Warrell, A.
B. Warrell & Co., and the Merrick County Mercantile
Company with the Central City Bank and its cashier, Mr.
Nash. To an understanding of this contention it is
necessary that a short history of certain transactions be
given in this connection. The predecessor of the Cen-
tral City Bank held notes made by John M. Persinger,

by his wife, by his wife's father, and by A. B. Warrell, aggregating in amount $6,500. These, it seems, had been given for an indebtedness really owing by John M. Persinger. Immediately after N. R. Persinger had organized the Central City Bank there was organized the Merrick County Mercantile Company as a corporation. To this corporation the cashier of Central City Bank loaned $1,000 to enable it to effect an exchange of some real property for a stock of goods. The Merrick County Mercantile Company, it seems, succeeded John M. Persinger in business, and at its organization he was made its president and A. B. Warrell its secretary and treasurer. These official relations, so far as the record discloses, have never ceased. About September 15, 1891, A. B. Warrell, with the knowledge and assent of the Central City Bank, took a portion of the goods of the Merrick County Mercantile Company of about the value of $3,800 to Mason City and there opened a store in his own name and proceeded to dispose of the goods with which he had been entrusted. For a fair proportion of the indebtedness of the Merrick County Mercantile Company Mr. Warrell, when he had selected the goods he was to take with him, made his own promissory note to the Central City Bank,—the mercantile company gave its note to the bank for the balance. In August the remainder of the stock of the Merrick County Mercantile Company was removed to Mason City. This portion, together with what had been previously under the management of A. B. Warrell, from this time forward constituted a single stock, which was managed under the name of A. B. Warrell & Co. As we understand the evidence, the note hereinbefore described as being for $3,300 was a renewal of the proportion for which A. B. Warrell gave his promissory note in 1891, and the notes for $4,000 and $1,075 were for the amounts due the bank and Mr. Nash respectively from the Merrick County Mercantile Company. It is urged by the defendant that the capital stock of the Merrick County Mercantile Company was

never disposed of, but was held almost exclusively by the Central City Bank. We understand from the evidence that there were issued at least five and perhaps fifteen shares of this stock of the par value of $10 per share to parties outside the bank and the president and secretary of the mercantile company. The certificates for the remainder of the capital stock, the secretary testified, were signed up in blank and left with the Central City Bank. N. R. Persinger testified that the certificates were left with the bank, but not as collateral. This is all the light we have on this subject, and while it shows a very loose mode of doing business, we have not been able to see how the bank, by acting as custodian of the certificates of stock, is chargeable with a fraudulent intent towards creditors of the mercantile company or towards A. B. Warrell or A. B. Warrell & Co., even if the individual and firm last indicated should be regarded as entities distinct from the mercantile company. In argument, however, the relations between the bank on the one hand and the mercantile company, A. B. Warrell, or A. B. Warrell & Co. on the other hand, it was insisted, showed that the bank was in fact the owner of the goods at every stage of the proceedings, and that when the bill of sale was made to Nash the transaction was merely an open assumption by the bank of a secret ownership it all along had held of the goods in question. There is in the record no evidence which justifies this contention. The removal of the goods from Central City, it was testified, without contradiction, was to find a market in which such goods would meet with a readier sale than at that place. Under the management of Mr. Warrell this expectation, to some extent, seems to have been realized. It is not disclosed why this condition did not continue after a large addition had been made to the stock and the management had become that of A. B. Warrell & Co. The credits given by the bank and Mr. Nash seem, from the first, to have been injudicious, but we can find no evidence that these credits were fraudulently extended.

The bank or its cashier had the same right that any other creditor had to obtain satisfaction of the indebtedness owing to it or to him and this right seems not to have been fraudulently exercised. The judgment of the district court is therefore reversed and the cause is remanded for further proceedings.

REVERSED AND REMANDED.

HARRISON, C. J., not sitting.